J-S78034-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| JOHNNIE LEE BOWIE | |
| Appellant | No. 497 WDA 2016 |

Appeal from the Judgment of Sentence January 26, 2016
in the Court of Common Pleas of Allegheny County Criminal Division
at No(s): CP-02-CR-0009855-2014

BEFORE: BENDER, P.J.E., OTT, J., and FITZGERALD,* J.

MEMORANDUM BY FITZGERALD, J.:          **FILED MARCH 16, 2017**

Appellant, Johnnie Lee Bowie, appeals from the judgment of sentence entered in the Allegheny County Court of Common Pleas following his bench trial convictions of persons not to possess firearms,[1] and two counts of theft by unlawful taking—moveable property.[2]  Appellant challenges the weight of the evidence and the discretionary aspects of his sentence.  We affirm.

The trial court's opinion summarized the relevant facts as follows:

> [Appellant] and Julie Cosentino were involved in a romantic relationship.  On April 26, 2014, they spent the night together at Ms. Cosentino's apartment.  After she awoke the next morning, Ms. Cosentino decided that she wanted to go to the local Giant Eagle supermarket to buy some food for breakfast.  [Appellant] remained in the

---

* Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 6105(a)(1).

[2] 18 Pa.C.S. 3921(a).

residence. When Ms. Cosentino returned home, [Appellant] was gone. Cash in the amount of approximately $2,000 and a Taurus nine millimeter firearm were missing from Ms. Cosentino's apartment. The cash had been kept inside Ms. Cosentino's bedroom closet. The firearm had been kept in a backpack in Ms. Cosentino's bedroom. Ms. Cosentino suspected [Appellant] of taking the items because he had previously seen her retrieve cash from her closet.

Ms. Cosentino immediately attempted to contact [Appellant]. She sent him text messages advising him that she needed the cash and asking him to return the cash and the firearm. [Appellant] sent text messages back to Ms. Cosentino telling her, "I'll be back, I promise." He texted, "I'll explain." He further texted

It was wrong how I did that, but things went smooth. I know I probably lost you but here's the deal. I can give you $250 every other day. Shit's going to move.

Ms. Cosentino sent him a text message telling [Appellant] that she wanted the gun back. [Appellant] sent her a text message back advising that, "[y]ou can have your fucking gun. I know what happened wasn't cool but you are not going to keep talking shit to me." Ms. Cosentino never gave [Appellant] permission to take the cash or the firearm. . . .

Trial Ct. Op., 6/29/16, at 2-3. During the bench trial, Ms. Cosentino testified on direct examination:

[The Commonwealth:] When did the firearm go missing?

[Witness:] The day I had woke up in April, that morning.

*    *    *

Q. And who else had access to your home during that period of time?

A. Just my roommate and [Appellant].

* * *

Q. You mentioned the gun was missing. Was there anything else you noticed missing when you woke up on that morning?

A. All of my money.

Q. Where had your money been?

A. I had it stashed away in [my bedroom] closet.

* * *

Q. Did you show him where the money was?

A. I believe he seen me one day get money out of my closet. That's the only way I could possibly think of him knowing where it was.

* * *

Q. How much money was taken?

A. About $2,500.

* * *

Q. How did you know how much money there was?

A. I usually keep a record in my phone about how much money I keep in that box and how much money I have in my bank account.

Q. What did you do when you discovered these items were missing?

A. I continuously texted him, called him. . . .

Q. You indicated that you sent text messages to him?

A. Yes.

Q. When did you do that?

A. Immediately as soon as I came home and I noticed that he was no longer in my place.

Q. . . . Did you notice these items were missing around the same time you noticed [Appellant] was missing from your home?

A. Yes.

* * *

Q. And how do you know [these text messages] are between you and [Appellant]?

A. He's had the same number the whole time I have talked to him.

N.T. Trial, 10/28/15, at 10-14. On cross-examination, defense counsel questioned Ms. Cosentino regarding the amount of money missing:

[Defense Counsel:] Now, you reported to the police officer that [Appellant] had taken $2,500; is that right?

[Witness:] Yes.

Q. But in the text messages you are referring to $2,000?

A. I believe I say two and then I say three in another text message just because I wasn't 100 percent sure at the time what amount it really was.

*Id.* at 21.

Appellant subsequently testified at the bench trial:

[Defense Counsel:] What did you do when you woke up on April 26?

[Appellant]: Panicked because I was—I'm a married man. I wasn't supposed to be staying out all night. I jumped up, grabbed what I could and I was running out the

- 4 -

house—out of the apartment because I, you know, I messed up, in lighter words. And she asked me—you know, she was talking about breakfast. I said I had to go. And she said, Why. And that's when I told her, I'm married. I gotta go.

Q. I believe you testified that she appeared to you to be angry when you told her that?

A. Surprised and angry.

Q. In this conversation you had with Ms. Cosentino that morning . . . did she mention to you that a gun or $2,000 was missing?

A. No.

\* \* \*

Q. Did you contact [Ms. Cosentino] about it?

A. No.

Q. Why not?

A. I couldn't actually. . . . [B]ecause when I ran out the house in the morning I left—I didn't have my phone. So I couldn't call her either.

Q. When you woke up on the morning of the 26th and left out, you left your phone and other items at Ms. Cosentino's apartment?

A. When I ran out in the morning, yes.

\* \* \*

Q. Did you send those test messages to her?

A. No, I didn't.

Q. So you believe they are fake?

- 5 -

A. They look like real messages, but they wasn't from me. I didn't even have my phone to send a message.

*    *    *

Q. Did you steal Ms. Cosentino's gun?

A. No.

Q. Did you steal any money, $2,000, from Ms. Cosentino?

A. No.

*Id.* at 39-42.

The trial court convicted Appellant of persons not to possess firearms and two counts of theft on October 28, 2015. Thereafter, counsel filed a motion to withdraw due to Appellant's failure to cooperate. The court sentenced Appellant on January 26, 2016, to five to ten years' imprisonment for the firearms offense, followed by two years' probation for one of the theft offenses. The court imposed no further penalty on the remaining theft offense. That same day, the court granted counsel's motion to withdraw and appointed the Public Defender's Office to represent Appellant.

On February 11, 2016, Appellant filed a post-sentence motion *nunc pro tunc*, along with a motion for leave to file supplemental post-sentence motions *nunc pro tunc* and a motion for an extension of time for the court to decide all post-sentence motions *nunc pro tunc*. The court granted Appellant's latter two motions on February 18, 2016. Appellant then filed a post-sentence motion *nunc pro tunc*, in which he raised his weight of the evidence and discretionary aspects of sentencing claims. The court

subsequently denied all of Appellant's post-sentence motions on April 1, 2016. Appellant timely filed a notice of appeal on April 7, 2016. The court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Appellant timely complied.

Appellant raises the following issues for our review:

> I. Whether the trial court abused its discretion in not granting [Appellant's] Post-Sentence Motion requesting a new trial when the verdicts of guilty as to all three offenses were contrary to the weight of the evidence?

> II. Whether the trial court's sentence is unreasonable, manifestly excessive, and inconsistent with the Sentencing Code in that the trial court relied on impermissible factors when considering the gravity of the offenses as it relates to the impact on the victim and the community, and failed to consider relevant and required sentencing criteria, including the character, personal history, and rehabilitative needs of [Appellant], thereby violating 42 Pa.C.S.A. § 9721(b)?

Appellant's Brief at 6.

In his first issue, Appellant argues his guilty verdicts were against the weight of the evidence because the Commonwealth's primary evidence, Ms. Cosentino's testimony, was vague, unreliable, and inconsistent. Appellant claims Ms. Cosentino never stated that she saw Appellant with her money and gun, but instead merely speculated based on the fact that Appellant saw her take her money out of a box in her closet. Appellant alleges Ms. Cosentino also admitted that her roommate's ex-boyfriend had previously been charged with burglarizing their apartment. Appellant also contends the alleged text messages between Appellant and Ms. Cosentino were full of

inconsistencies, such as the amount of money allegedly missing. Appellant maintains Ms. Cosentino had a motive to lie and fabricate the text messages because the morning of the alleged theft he revealed to her that he was married. Appellant concludes this Court should vacate his judgment of sentence and remand for a new trial. We determine that no relief is due.

Our standard of review regarding challenges to the weight of the evidence is as follows:

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the . . . verdict if it is so contrary to the evidence as to shock one's sense of justice.
>
> Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

***Commonwealth v. Devine***, 26 A.3d 1139, 1146 (Pa. Super. 2011) (citations omitted).

Instantly, Appellant's weight of the evidence issue is based solely on the credibility of Ms. Cosentino's testimony. Ms. Cosentino testified that on the morning of April 26, 2014, she left Appellant at her apartment and returned home to find Appellant missing along with her gun and approximately $2,000. ***See*** N.T. Trial, at 10. At trial, the Commonwealth introduced screenshots of a text message conversation taken from Ms.

Cosentino's phone on April 26th, which purported to show Ms. Cosentino confronting Appellant about the missing items. *Id.* at 20-22. Appellant subsequently went on to refute Ms. Cosentino's allegations and testified that he had left his cellphone at her apartment the morning of April 26th, after informing Ms. Cosentino that he was married and leaving her in a state of anger. *Id.* at 39-42.

The trial court, acting as the fact finder, heard the testimony of both witnesses and found Ms. Cosentino to be credible. *See id.* at 63 (stating: "I find Ms. Cosentino's testimony to be credible, particularly in light of the fact that she gets up, everything is fine, she goes to Giant Eagle to get breakfast, she is gone twenty minutes. In twenty minutes her gun, her money and [Appellant] are gone."). After conducting a thorough examination of the record, we conclude the court did not abuse its discretion in finding Ms. Cosentino to be a credible witness. *See Devine*, 26 A.3d at 1146. Therefore, Appellant's weight of the evidence issue merits no relief, as his guilty verdicts do not shock one's sense of justice. *See id.*

In his second issue, Appellant argues his sentence of five to ten years' imprisonment followed by two years' probation is manifestly excessive. Appellant alleges the court relied on improper factors when imposing his

sentence.[3]   Appellant also contends the court failed to consider mitigating factors, including that he had taken affirmative steps to become a rehabilitated member of society by being steadily employed, completing various programs while incarcerated, and having the support of his family and community.   Appellant concludes this Court should vacate his judgment of sentence and remand for a new sentencing hearing.   We determine that no relief is due.

This Court has stated that:

> [c]hallenges to the discretionary aspects of sentencing do not entitle an appellant to appellate review as of right.   Prior to reaching the merits of a discretionary sentencing issue:
>
> > [W]e conduct a four part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).
>
> Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or raised in a motion to modify the sentence imposed at that hearing.

---

[3] Appellant's brief fails to articulate what improper factors the trial court allegedly relied on during sentencing.   Therefore, this argument is waived. *See* Pa.R.A.P. 2119(a), (f).

*Commonwealth v. Evans*, 901 A.2d 528, 533-34 (Pa. Super. 2006) (quotation marks and some citations omitted).

> [T]he Rule 2119(f) statement must specify where the sentence falls in relation to the sentencing guidelines and what particular provision of the Code is violated (*e.g.*, the sentence is outside the guidelines and the court did not offer any reasons either on the record or in writing, or double-counted factors already considered). Similarly, the Rule 2119(f) statement must specify what fundamental norm the sentence violates and the manner in which it violates that norm . . . .

*Commonwealth v. Goggins*, 748 A.2d 721, 727 (Pa. Super. 2000) (*en banc*). "Our inquiry must focus on the **reasons** for which the appeal is sought, in contrast to the **facts** underlying the appeal, which are necessary only to decide the appeal on the merits." *Id.* A claim that a sentence is manifestly excessive **might** raise a substantial question if the appellant's Rule 2119(f) statement sufficiently articulates the manner in which the sentence imposed violates a specific provision of the Sentencing Code or the norms underlying the sentencing process. *Commonwealth v. Mouzon*, 812 A.2d 617, 627 (Pa. 2002). However, "[a] claim that a sentencing court failed to consider certain mitigating factors does not raise a substantial question . . . ." *Commonwealth v. Lewis*, 911 A.2d 558, 567 (Pa. Super. 2006) (citations omitted).

Initially, Appellant timely appealed, preserved his discretionary aspects of sentencing issue in his post-sentence motions *nunc pro tunc*, and included a Pa.R.A.P. 2119(f) statement in his brief. *See Evans*, 901 A.2d at 533.

Appellant's Rule 2119(f) statement, however, fails to indicate where his sentence fell in the sentencing guidelines. ***See Goggins***, 748 A.2d at 727. Nevertheless, Appellant asserts the trial court imposed a manifestly excessive sentence. Generally, such a bald assertion does not raise a substantial question. ***See Mouzon***, 812 A.2d at 627. In any event, we shall address the merits of Appellant's issue.

> This Court has stated:
>
>> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

***Commonwealth v. Sheller***, 961 A.2d 187, 190 (Pa. Super. 2008) (citation omitted). In making a reasonableness determination, a court should consider four factors: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the opportunity of the sentencing court to observe the defendant, including any presentence investigation; (3) the findings upon which the sentence was based; and (4) the guidelines promulgated by the commission. 42 Pa.C.S. § 9781(d)(1)-(4).

A sentence may be found to be unreasonable if it fails to properly account for these four statutory factors, or if it "was imposed without

express or implicit consideration by the sentencing court of the general standards applicable to sentencing[.]" ***Commonwealth v. Walls***, 926 A.2d 957, 964 (Pa. 2007). These general standards mandate that a sentencing court impose a sentence "consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b).

"[W]here the sentencing court imposed a standard-range sentence with the benefit of a pre-sentence report, we will not consider the sentence excessive." ***Commonwealth v. Corley***, 31 A.3d 293, 298 (Pa. Super. 2011); ***see also Commonwealth v. Moury***, 992 A.2d 162, 171 (Pa. Super. 2010) (stating "where a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code"). Under such circumstances, "we can assume the sentencing court was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." ***Corley***, 31 A.3d at 298 (quoting ***Commonwealth v. Devers***, 546 A.2d 12, 18 (Pa. 1988)) (quotation marks omitted).

Here, Appellant's sentence is in the standard range of the Sentencing Guidelines. Because the trial court reviewed Appellant's presentence investigation report, we assume it took into consideration the mitigating

circumstances raised in Appellant's brief, such as his steady employment, family and community support, and the completion of various programs during incarceration. *See Corley*, 31 A.3d at 298. Moreover, the trial court summarized its reasons for imposing Appellant's sentence:

> This [c]ourt considered [Appellant's] lengthy criminal history which includes, among other crimes, a prior conviction for a felony possession of a firearm, two separate felony drug convictions, three separate felony theft convictions, two separate felony criminal trespass convictions and one felony burglary conviction. [Appellant] has been committed and re-committed to state custody at least four times. The [c]ourt was also concerned that [Appellant] never returned the firearm he stole and that the firearm was unaccounted for as of the time of sentencing.

> Based on the totality of the circumstances, this [c]ourt believed [Appellant] had multiple opportunities to conform his conduct to the law and he repeatedly chose not to do so. He further demonstrated that he is a danger to the community. This [c]ourt considered all relevant sentencing issues, most notably [Appellant's] substantial rehabilitative needs, protection of the public, deterring [Appellant] from engaging in future similar conduct and the impact on [Ms. Cosentino]. The sentence imposed in this case was not unduly harsh as it was within the standard range of the sentencing guidelines and it properly reflected [Appellant's] culpability in this case.

Trial Ct. Op. at 8-9. We discern no abuse of discretion in the trial court's conclusions. *See Sheller*, 961 A.2d at 190. Therefore, Appellant's sentence of five to ten years' imprisonment followed by two years' probation was not manifestly excessive. *See Corley*, 31 A.3d at 298; *Moury*, 992 A.2d at 171. Accordingly, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  3/16/2017